**In re Mary GERMAINE, Debtor.**

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant,**

**v.**

**Mary GERMAINE, Appellee.**

**BAP No. WW–91–2177–RJM.**

**Bankruptcy No. 86–01880.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 22, 1993.

Decided March 31, 1993.

---

Berry A. Heatley, Washington, DC, for appellant, U.S.

John S. Woodburne, Bellevue, WA, for appellee, Mary Germaine.

Before RUSSELL, JONES and MEYERS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The United States appeals a bankruptcy court order holding the IRS liable for $2,000 in attorney's fees incurred by the debtor in defending attempts to collect taxes in violation of a discharge order. We AFFIRM.

## I. FACTS

Mary Germaine ("Germaine") filed a Chapter 13[1] petition. Her plan was confirmed on May 12, 1986. The Internal Revenue Service ("IRS") filed a claim in that case for $3,588.50 which was paid in full. Germaine's Chapter 13 case was completed and closed on March 6, 1990. Germaine subsequently received a notice from the IRS dated May 14, 1990, indicating that her 1989 tax refund was being applied to taxes allegedly owed for the period ending December 31, 1984. Germaine brought a motion to reopen her case and to accord her relief. This motion culminated in a stipulation with the IRS stating that the tax liability for 1984 had been discharged, and in an order directing the IRS to return her refund.

In January 1991, the debtor received a "Notice of Intent to Levy" from the IRS indicating its intent to recover $2,437.81 in taxes allegedly owed for the tax period ending December 31, 1981. The debtor again found it necessary to file a motion seeking further assistance of the bankruptcy court.

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

The bankruptcy court found that the IRS Notice of Intent to Levy for the 1981 taxes was a second violation of the § 524 discharge and ordered the IRS to pay $600 in compensatory damages. That order was subsequently reversed by this Panel in an unpublished memorandum decision dated April 23, 1992 (WW–91–1596–RPAs) on the basis that sovereign immunity under § 106(a) had not been waived, effectively barring monetary recovery against the IRS.

On June 3, 1991, the same day that the bankruptcy court issued the order imposing sanctions for violating Germaine's discharge order, the IRS issued yet another Notice of Intent to Levy to Germaine for the payment of 1981 FUTA taxes which were the subject of the January 1991 notice. When she arrived home, Germaine found a message on her telephone answering machine indicating that the IRS had called and wanted to audit her taxes from 1981 through 1986 as it was believed that she "owed the Internal Revenue Service a lot of money."

Nine days later, on June 12, 1991 Germaine received a letter from the IRS stating that her 1990 tax refund had been applied in payment of the 1981 FUTA taxes which had been declared discharged in the June 3, 1991 order.

By a motion dated June 26, 1991, Germaine sought an order from the bankruptcy court directing the IRS to: (1) abate permanently the assessment of 1981 FUTA taxes; (2) refrain from auditing Germaine's tax returns for years prior to 1987; (3) refund Germaine's $634.00 overpayment of 1990 taxes; (4) pay attorney's fees incurred in bringing the motion; and (5) pay punitive damages payable to the debtor for repeated violations of her discharge. The IRS opposed this motion on the grounds that the United States had not waived its sovereign immunity with respect to an award of attorney's fees or punitive damages.

The bankruptcy court granted the requested relief, except for punitive damages, and issued an order granting the permanent abatement, the refund of applied tax overpayment and ordered that all pre-petition taxes were either paid in full or discharged. The court further awarded Germaine $2,000 under § 106(a) and under tax code provision 26 U.S.C. § 7430. The IRS appeals the award of attorney's fees. We affirm.

## II. ISSUE

1. Whether the doctrine of sovereign immunity under § 106(a) bars monetary recovery against the United States for violation of the § 524(a) discharge injunction.

2. Whether the bankruptcy court may award attorney's fees against the IRS under 26 U.S.C. § 7430.

## III. STANDARD OF REVIEW

Since the facts are not in dispute, this appeal involves interpretation of statutory provisions and legal conclusions under *de novo* review. *In re Klein*, 57 B.R. 818, 819 (9th Cir. BAP 1985); *In re Town & Country Home Nursing Services, Inc.*, 112 B.R. 329, 332 (9th Cir. BAP 1990), *aff'd*, 963 F.2d 1146 (9th Cir.1992).

This appeal also involves the award of attorney's fees under 26 U.S.C. § 7430. Bankruptcy court determinations regarding attorney's fees will not be disturbed on appeal absent an abuse of discretion or erroneous application of the law. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 322 (9th Cir.1991); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985). "Awards or denial of awards of attorneys' fees under Section 7430 are reviewed under an abuse of discretion standard." *Zinniel v. C.I.R.*, 883 F.2d 1350, 1354 (7th Cir.1989). *See e.g., Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

## IV. DISCUSSION

The IRS has, yet again, violated Germaine's discharge order by issuing another Notice of Intent to Levy. In the previous appeal by the parties before this Panel, we decided that the debtor's claim for sanctions against the IRS did not fall within the scope of section 106(a). Although the issue before us now involves an award of attor-

ney's fees and not monetary sanctions, the same reasoning applies.

We are not, however, without sympathy for Germaine's plight and are also disturbed by the actions of the IRS. Nonetheless, we are bound to follow the law as it currently stands. Here, the IRS has admitted to repeated violations of the debtor's permanent injunction under § 524, forcing the debtor to resort to the bankruptcy court to find relief. Clearly, had these same acts been committed by any non-governmental entity, outright sanctions—not just attorney's fees—would be more than warranted. Even after acknowledging the violations, the IRS again refuses to compensate the debtor for the costs incurred to rectify the problems caused by the repeated violations of Germaine's discharge. Instead, the IRS asserts that its actions are insulated by the doctrine of sovereign immunity. Although immunity is not waived by § 106(c), and the facts do not support a waiver under the narrow wording of § 106(a), we hold that a bankruptcy court has the power to award attorney's fees under 26 U.S.C. § 7430.

### A. Waiver of Sovereign Immunity under § 106(a).

■ The discharge under Bankruptcy Code § 524(a) operates as a permanent injunction against actions to recover debts subject to the discharge[2]. The IRS does not challenge the finding that the acts complained of violated this injunction; it appeals the $2,000 award of attorney's fees on the basis that it is immune from monetary recovery.

**2.** Section 524(a) provides, in pertinent part, that a discharge:
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;
> ....

**3.** This concept was rejected by the colonists when they declared their independence from the Crown. *See e.g., Nevada v. Hall,* 440 U.S. 410, 415, 99 S.Ct. 1182, 1185, 59 L.Ed.2d 416

■ The doctrine of sovereign immunity protects governmental units from suits brought by the debtor in a bankruptcy case. *Hoffman v. Conn. Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). Its basis derives from the concept that the king could do no wrong[3].

■ Sovereign immunity, however, may be waived provided the waiver is clear and explicit and not merely inferred. *Hoffman,* at 2822. A waiver of sovereign immunity must be unequivocally expressed, must be construed strictly in favor of the sovereign, and must not be enlarged beyond what the language requires. *Nordic Village,* —— U.S. at ——–——, 112 S.Ct. at 1014–15.

The Supreme Court, in *Nordic Village,* held that subsections (a) and (b) of § 106 meet the unequivocal expression requirement; however, subsection (c) does not. *Nordic Village,* —— U.S. at ——–——, 112 S.Ct. at 1014–15.

The bankruptcy court determined, and the debtor contends, that the IRS' sovereign immunity is waived by section 106(a), which reads as follows:

> A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

■ Although § 106(a) can effectively waive sovereign immunity, it is not properly invoked on the facts before us. Essentially, § 106(a) has three requirements: the government must have filed a claim

(1979); *Langford v. United States,* 101 U.S. 341, 343, 25 L.Ed. 1010 (1880). "Despite its ancient lineage, the doctrine of sovereign immunity is nothing but a judge-made rule that is sometimes favored and sometimes disfavored. Its original reliance on the notion that a divinely ordained monarch 'can do no wrong' is, of course, thoroughly discredited." *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1019, 117 L.Ed.2d 181 (1992) (J. Stevens, joined by J. Blackmun, dissenting) (citations omitted). The doctrine, unlike many monarchies, has survived and is still law. *See Nordic Village, Id.*

against the estate; the claim against the government must arise from the same transaction or occurrence as the government's claim; the claim against the government must be property of the estate. *In re Graham*, 981 F.2d 1135, 1141 (10th Cir. 1992).

Applying basically the same reasoning as in the previous appeal by the parties before this Panel, the debtor's claim for attorney's fees does not fall within the scope of section 106(a): The IRS has not asserted a claim against the bankruptcy estate that arises from the same transaction or occurrence as the debtor's claim against the IRS; and the claim for fees against the IRS belongs to the debtor, not to the estate.

■ With respect to the IRS' claim, § 106(a) requires the assertion of a claim against the estate, not merely the assertion of a claim against the debtor. While we indicated in *Town & Country Home Nursing Services*, 112 B.R. 329, 333–334 (9th Cir. BAP 1990), *aff'd*, 963 F.2d 1146 (9th Cir.1992) that a government entity need not file a formal proof of claim against the estate to waive its sovereign immunity under section 106(a), reliance upon the mere existence of a claim against the debtor, rather than against the estate, reads our holding and the statutory language too broadly. *Town & Country* involved the assertion and enforcement of a claim against the estate through a series of set-offs involving estate property. In holding that the government's actions in enforcing payment were the functional equivalent of filing a claim and were therefore sufficient to waive immunity under section 106(a), we noted that the purpose of section 106(a) was to prevent a government entity from obtaining a distribution from the estate without subjecting itself to claims by the debtor arising from the same transaction or occurrence. 112 B.R. at 334.

Where, as in this case, the governmental entity does not assert a claim against the estate or attempt to collect from estate assets, but merely asserts a right to payment from the debtor after discharge and from assets that are no longer part of the estate, the purposes underlying section 106(a) are not implicated. The IRS did not seek or obtain a distribution from the estate with respect to those claims that are related to the debtor's claim against the IRS. Rather, it merely sought collection from the debtor and from assets which had revested in the debtor. *See* § 1327(b) and the discussion below. If it had been successful in its post-discharge collection efforts, the IRS' collection would not have reduced the assets of the estate available to pay other creditors of the estate. It follows that the IRS did not assert a claim against the estate that was related to the debtor's claim for damages against the IRS.

■ Additionally, section 106(a) cannot apply because the claim against the IRS belongs to the debtor, not to the estate. The reopening of a case is merely a ministerial or mechanical act which allows the court file to be retrieved from the stacks of closed cases to enable the court to receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the case. *In re David*, 106 B.R. 126, 128–29 (Bankr.E.D.Mich.1989); *see In re Daniels*, 34 B.R. 782 (9th Cir. BAP 1983).

Under § 1327(b), unless the plan provides otherwise, the confirmation of a Chapter 13 plan vests all property of the estate in the debtor. In this case, we have no indication that the plan provides otherwise.

In this case, the cause of action or property interest at issue arose not only after confirmation, but also after consummation of the plan and the entry of a discharge pursuant to § 1328. The $2,000 awarded here is for attorney's fees. Obviously, this recovery will not be used to pay creditors of the debtor or otherwise inure to the benefit of the estate. Similarly, there is no contention that if the debtor could not recover damages from the IRS, the estate would bear the loss. Therefore, the cause of action against the IRS belongs to the debtor and not to the estate for purposes of § 106(a).

We hold that the facts of this case do not invoke waiver of sovereign immunity under

§ 106(a). However, this holding does not preclude the award of attorney's fees on the basis of an independent provision such as 26 U.S.C. § 7430, the applicability of which is discussed below.

## B. *Award of Attorney's Fees under 26 U.S.C. § 7430.*

Independent of the bankruptcy code waivers contained in § 106, § 7430 of the Internal Revenue Code operates as a limited waiver of sovereign immunity. It allows for an award of reasonable litigation and administrative costs in limited circumstances in "any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection or refund of any tax, interest or penalty" under the Internal Revenue Code. 26 U.S.C. § 7430(a).

### 1. *The bankruptcy court is a Court of the United States for purposes of awarding costs and fees under 26 U.S.C. § 7430.*

■ The IRS submits that the bankruptcy court is not considered a "court of the United States" for purposes of awarding attorney's fees under 26 U.S.C. § 7430[4] because it is not an Article III court, and therefore that subject matter jurisdiction is lacking. The definitional section of 26 U.S.C. § 7430(c) states the following:

(5) Administrative proceedings.—The term "administrative proceeding" means any procedure or other action before the Internal Revenue Service.

(6) Court Proceedings.—The term "court proceeding" means any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court.)

26 U.S.C. § 7430(c)(4) and (5).

■ The scope of judicial power that may be exercised by a non-Article III court is not completely settled[5]. Whether the bankruptcy court is a "court of the United States" specifically for purposes of 26 U.S.C. § 7430, or its sister statute, the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412[6], has not been addressed by the Ninth Circuit. Circuits considering the question are divided: See *In re Brickell Inv. Corp.*, 922 F.2d 696, 701 (11th Cir.

---

**4.** The text of 26 U.S.C. § 7430 appears at Appendix A.

**5.** "Our cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States." *Freytag v. C.I.R.,* — U.S. —, —, 111 S.Ct. 2631, 2644, 115 L.Ed.2d 764 (1991) (citing *American Insurance Co. v. Canter,* 26 U.S. (1 Pet.) 511, 546, 7 L.Ed. 242 (1828); *Williams v. United States,* 289 U.S. 553, 565–7, 3 S.Ct. 751, 754–55 (1933)). The Supreme Court in *Freytag* held that the Tax Court, an Article I court, exercises the judicial power of the United States and is a "Court of Law" within the meaning of the Appointments Clause of the Constitution. The bankruptcy court is not an Article III court and the scope of its jurisdiction is not fully settled. *See e.g., Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987); *In re Perroton,* 958 F.2d 889 (9th Cir.1992).

**6.** The Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412 is the predecessor of 26 U.S.C. § 7430. *See In re Brickell Inv. Corp.,* 922 F.2d 696, 700 (11th Cir.1991). The EAJA is the general statute by which Congress has authorized monetary recovery for attorneys' fees for unjustified federal government action, while 26 U.S.C. § 7430 is an analogous statute contained in the Internal Revenue Code specifically tailored to tax related actions. Section 7430 supplants the EAJA for the award of attorney's fees and costs in proceedings to which § 7430 is applicable. *Id.* EAJA § 2412(e) states that "the provisions of this section shall not apply to any costs, fees and other expenses in connection with any proceeding to which § 7430 of the Internal Revenue Code of 1954 applies."

The two statutes have parallel provisions which have been interpreted by courts consistently. *See, Powell v. C.I.R.,* 791 F.2d 385, 390 (5th Cir.1986) ("Absent some compelling reason to read differently analogous phrases in the Internal Revenue Code statute and Equal Access to Justice Act authorizing recovery of attorney's fees by the prevailing party, they should be interpreted consistently."); *Sharpe v. United States,* 607 F.Supp. 4, 5 (D.C.Va.1984) (stating that § 7430 was not intended to change existing standards for attorney awards under the Equal Access to Justice Act nor to do more than supplant the EAJA with regards to tax matters.); *Kaufman v. Egger,* 584 F.Supp. 872 (D.C.Me. 1984), *aff'd,* 758 F.2d 1 (1st Cir.1985) (holding that there is no dispositive difference between the standards involved in 28 U.S.C. § 2412 and 26 U.S.C. § 7430); *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440 (10th Cir.1985).

1991) (holding that a bankruptcy court does not have jurisdiction to award attorney's fees under 26 U.S.C. § 7430); *contra, O'Connor v. U.S. Dept. of Energy*, 942 F.2d 771 (10th Cir.1991) (explicitly rejects the *Brickell* reasoning and holds that a bankruptcy court has jurisdiction to award fees under EAJA § 2412.)

Bankruptcy courts and reviewing courts have awarded, or have declined to award, fees pursuant to these statutes on the implicit assumption that the bankruptcy court has the authority to do so without specifically addressing the issue. *See, United States v. McPeck*, 910 F.2d 509 (8th Cir. 1990) (remanding for a bankruptcy court determination pursuant to 26 U.S.C. § 7430, where the bankruptcy court erroneously applied EAJA, 28 U.S.C. § 2412, instead); *In re Esmond*, 752 F.2d 1106 (5th Cir.1985) (reversing and remanding a bankruptcy court ruling denying fees under EAJA 28 U.S.C. § 2412); *In re Chambers*, 140 B.R. 233 (N.D.Ill.1992); *In re Robidoux*, 116 B.R. 320 (D.Mass.1990); *In re Olson*, 100 B.R. 458 (Bankr.N.D.Iowa 1989); *In re Graham*, 106 B.R. 692 (Bankr. D.Colo.1989); *In re Kiker*, 98 B.R. 103, (Bankr.N.D.Ga.1988).

In *In re Brickell Inv. Corp.*, 922 F.2d 696, 701 (11th Cir.1991), the Eleventh Circuit held that a bankruptcy court, because it is a non-Article III court, is not a "court of the United States" pursuant to 26 U.S.C. § 7430. The court in *Brickell* reasoned that the statute's reference to "court" was limited to only Article III courts because of the separate inclusion of the other non-Article III courts, the tax court and claims court:

> The fact that § 7430 expressly extended jurisdiction to the Tax Court and the Claims Court lends further support to our holding that these non-article III courts would not have otherwise been given jurisdiction under the rubric of a "court of the United States."

*Brickell*, 922 F.2d at 701. The *Brickell* court also relied upon decisions limiting application of EAJA 28 U.S.C. § 2414 to Article III courts. *Bowen v. Commissioner of Internal Revenue*, 706 F.2d 1087 (11th Cir.1983) (non–Article III tax courts did not have jurisdiction to award attorney's fees under EAJA); *In re Davis*, 899 F.2d 1136 (11th Cir.1990) (non–Article III bankruptcy courts did not have jurisdiction to award attorney's fees under EAJA).

The Tenth Circuit in *O'Connor v. U.S. Dept. of Energy*, 942 F.2d 771 (10th Cir. 1991) explicitly rejected the analysis in *Brickell* and held that bankruptcy courts have jurisdiction to award attorney's fees under EAJA 28 U.S.C. § 2412, adopting a "plain meaning" analysis:

> The purpose of the EAJA is clear and the language "any court having jurisdiction of that action," is plain, simple and unambiguous. We therefore decline to follow the Eleventh Circuit's analysis and instead look to the plain meaning of the language to determine the jurisdictional scope of § 2412(d)(1)(A).
>
> \* \* \* \* \* \*
>
> While courts may be classified according to their means of creation as either constitutional (Article III) or legislative (i.e. Bankruptcy), Congress chose not to modify the word "court" when it drafted 28 U.S.C. § 2412(d)(1)(A). Had it meant to restrict the use of this provision to constitutional courts, Congress could have done so. The broad language employed by Congress, in its ordinary usage, would include the bankruptcy court.

*O'Connor*, at 773. The court in *O'Connor* also thought it significant that the phrases utilized in § 2412(d)(1)(A) are simply "a court" and "any court" as opposed to the phrase "court of the United States." *Id.* at 773.

Equally persuasive is the reasoning that Congress had attempted to be as inclusive as possible on what forum may hear a § 7430 action by the broad and inclusive language of "any administrative or court" proceedings. 26 U.S.C. § 7430(a). By the explicit inclusion of administrative proceedings in § 7430(c)(5), it is clear that Congress did not intend for this section to be limited exclusively to Article III courts. In *In re Chambers*, 140 B.R. 233 (N.D.Ill. 1992) the district court affirmed a bankruptcy court award of attorney's fees un-

der 26 U.S.C. § 7430 also explicitly rejecting *Brickell:*

> Unlike Tax Court and Claims Court, which are independent judicial bodies, and as such had to be specifically included in § 7430, bankruptcy courts are units of the United States District Court. Bankruptcy courts do not operate independently of the United States District Courts; they are adjuncts of the district court.

*Chambers,* at 237–8. The *Chambers* court reasoned:

> [T]he *Brickell* court took an unduly restrictive view of the language of the statute. "As a matter of statutory construction, courts have frequently determined that 'includes' enlarges the scope of a statute rather than limits it." ...
> The court agrees that if Congress had wanted to limit the scope of 26 U.S.C. § 7430 to the courts listed, it could have easily done so.

*Chambers,* at 237 (citations omitted).

We are aware that the Ninth Circuit has held that a bankruptcy court was not a "court of the United States" under 28 U.S.C. § 451, the definitional section, and was therefore lacking in authority to waive bankruptcy filing fees under 28 U.S.C. § 1915(a). *In re Perroton,* 958 F.2d 889, 896 (9th Cir.1992). The court in *Perroton* concluded that the reference by 28 U.S.C. § 451 to judges that "shall hold their Offices during good behavior" is a term of art limited to Article III judges who enjoy life tenure, subject only to removal by impeachment. *Id.* at 893.

■ However, the waiver sought here is under 26 U.S.C. § 7430. The definitional section found in 28 U.S.C. § 451, discussed in *Perroton,* does not apply to title 26 of the United States Code. That statute has its own definitional section, 26 U.S.C. § 7430(c)(5) and (6), which specifically includes non-Article III courts. Unlike Title 28, the reference to "administrative proceedings" is a clear indication that its application was not intended by Congress to be exclusively limited to Article III courts. We therefore reject *Brickell* and hold that

the bankruptcy court may award attorney's fees under 26 U.S.C. § 7430.

2. *The bankruptcy court's application of the elements and satisfaction of 26 U.S.C. § 7430.*

■ Examining the facts of this case, we conclude that the elements of 26 U.S.C. § 7430 have been satisfied and that the bankruptcy court did not abuse its discretion in awarding attorney's fees in the amount of $2,000.

Section 7430(a) provides that in the case of any administrative or court proceeding brought by or against the United States in connection with the determination, collection or refund of any tax, interest, or penalty, the "prevailing party" may be awarded a judgment for (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs incurred in connection with such court proceeding.

In general, a "prevailing party" may be awarded reasonable administrative and reasonable litigation costs if the party has: (1) exhausted the administrative remedies; (2) established that the IRS' position in the proceeding was not substantially justified; (3) substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; (4) established that the prevailing party's net worth did not exceed $2 million at the time the proceeding was commenced; and (5) not unreasonably protracted any portion of the proceeding. 26 U.S.C. § 7430(b) and (c).

The IRS challenges the bankruptcy court's award of attorney's fees on the ground that Germaine is not a "prevailing party" under the statute, and that Germaine did not "exhaust the administrative remedies" within the Internal Revenue Service. We reject these contentions.

i. *Prevailing Party.*

■ A "prevailing party" is defined

by 26 U.S.C. § 7430(c)(4)(A)[7]. "To be a prevailing party, the taxpayer must prove that she substantially prevailed with respect to the amount in controversy or on the most significant issue and the United States' position was not substantially justified." *In re Chambers*, 140 B.R. 233, 240 (N.D.Ill.1992). Under § 7430, the position of the United States is substantially justified if it has a reasonable basis in both law and fact. *See Timms v. United States*, 742 F.2d 489, 492 (9th Cir.1984). The "position of the United States" is defined by 26 U.S.C. § 7430(c)(7)(A) as "the position taken by the United States in a judicial proceeding to which subsection (a) applies...."

Germaine's motion before the bankruptcy court requested an order directing the IRS to: (1) abate permanently the assessment of 1981 FUTA taxes; (2) refrain from auditing Germaine's tax returns for years prior to 1987; (3) refund Germaine's $634.00 overpayment of 1990 taxes; (4) pay attorney's fees incurred in bringing the motion; and (5) pay punitive damages payable to the debtor for repeated violations of her discharge. The IRS asserts that the only issues that it disputed were the latter two, and that on these two it prevailed.

■■■■■ But this does not address the basis of the ruling or the substance of the issue: The IRS repeatedly violated Germaine's discharge order without any legal justification. To be clear, it is undisputed that the IRS' actions were in violation of the permanent injunction embodied in Germaine's discharge order. The violations

are conceded as a given fact and not at issue in this or the previous [8] appeal. Germaine was forced to seek relief in the bankruptcy court against these actions and the court granted the relief. No legal basis was ever offered to justify the issuance of another Notice of Intent to Levy, or for the application of the debtor's tax refund or for any other complained of acts. Thus, Germaine has clearly prevailed on the major issues causing the matter to be brought before the court; the IRS' violations of the discharge order. The IRS challenge only relates to who shall bear the cost of the vindication of Germaine's rights. It simply asserts sovereign immunity. The assertion of immunity is not a legal justification; it is merely a shield from liability for those wrongful acts. Sovereign immunity does not convert an unjustified position into one that is justified—it merely avoids the application of the penalty to the wrongdoer. We hold that Germaine is a prevailing party in the bankruptcy court under 26 U.S.C. § 7430(c)(4)(A).

### ii. *Exhaustion of Remedies.*

■■■ The IRS' argument that Germaine did not "exhaust all administrative remedies" is totally without merit. As the bankruptcy court, in its order, noted:

> [B]ecause the attempts to collect the prepetition taxes had gone on so long, and an earlier abatement had apparently not resolved the problem, that the Debtor would be deemed to have exhausted her administrative remedies.

---

7. (4) Prevailing party.—

(A) In general.—The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28,

United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).

26 U.S.C. § 7430(c)(4).

8. The IRS asserts that its position was reasonable in opposing the award of damages by virtue of a favorable ruling obtained in the last appeal. We remind the IRS that the appeal was on the sovereign immunity issue only, not on whether the IRS was in violation of the discharge order. The IRS has never disputed the fact that its actions violated the permanent injunction—it only challenged the power of the court to issue monetary awards against it.

We agree. The IRS submits that the "requirement that administrative remedies be exhausted is not a mere nuisance inflicted upon persons who claim that the IRS is acting wrongfully in a tax matter. Rather, it is designated to permit the IRS to pass upon the merits of a person's claim before litigation commences." We must remind the IRS of the facts of this case. The IRS was made aware by Germaine that attempts to collect these taxes were in violation of her discharge order well before the time that the first motion for contempt was brought. If not by then, the IRS obviously had to have been aware by the time it was held in contempt by the bankruptcy court, on June 3, 1991.

On the same day the contempt order was issued, the IRS again violated the permanent injunction by issuing yet another Notice of Intent to Levy, and by calling the debtor at her home. Soon after, the IRS applied her tax refund to taxes which had been declared discharged in the contempt order. If this sequence of events involving bankruptcy court litigation was not enough notice to "permit the IRS to pass upon the merits of the person's claim" to recognize its error, we cannot see what more could be done.

The assertion by the IRS that the matter "could well have been avoided by a timely phone call" in the face of these facts ignores reality. Germaine was forced to resort to the courts to obtain relief from what were clearly unjustified IRS positions not once, but on two separate occasions. After all this, the thought of resolving the matter by means of a mere phone call appears wholly unrealistic.

The IRS attempts to minimize responsibility for its actions by blaming the issuance of the Notice of Intent to Levy on a "computer error." The IRS has been held accountable for the erroneous issuance a Notice of Intent to Levy in violation of the automatic stay, notwithstanding the assertion that it was the result of a computer error. *In re Price*, 103 B.R. 989, 993 (Bankr.N.D.Ill.1989) ("The size and complexity of the I.R.S. does not excuse its disregard for the automatic stay."); *In re*

*Santa Rosa Truck Stop*, 74 B.R. 641, 643 (Bankr.N.D.Fla.1987); *In re Shafer*, 63 B.R. 194, 198 (Bankr.D.Kan.1986). As we have stated before, any non-governmental entity would be subjected to sanctions for these same acts. "No private entity in similar circumstances would be permitted to justify its violation of the automatic stay on the basis of its complexity or inability to respond. Any entity, no matter how large or convoluted, must observe the automatic stay and the protections afforded the debtor thereunder." *In re Stucka*, 77 B.R. 777, 783 (Bankr.C.D.Cal.1987).

The IRS in its brief asserts that an adverse holding here "would encourage litigation by taxpayers and would result in a wasteful expenditure of resources by taxpayers, the Government, and the courts alike." Yet it was the improper action by the IRS in this case that was the sole cause of the "wasteful expenditures of resources" that the IRS now professes to caution against. The IRS' assertions that somehow all this litigation was the debtor's fault and could have been easily avoided but for the debtor's refusal to "exhaust administrative remedies" is wholly without merit. Germaine should rightfully be compensated for the costs incurred to vindicate her rights. We hold that given the factual circumstances of this case, Germaine is deemed to have exhausted administrative remedies and that the bankruptcy court did not abuse its discretion in awarding attorney's fees under 26 U.S.C. § 7430.

## CONCLUSION

For the IRS to knowingly and repeatedly violate Congress' clear mandate expressed by the permanent injunction of § 524, offering no legal justification other than "we are immune," is wholly unacceptable. Although sovereign immunity is not waived under § 106, we affirm the bankruptcy court ruling on the basis of the waiver found in 26 U.S.C. § 7430. AFFIRMED.

## APPENDIX A.

### § 7430. Awarding of costs and certain fees

(a) In general.—In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—

(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

(2) reasonable litigation costs incurred in connection with such court proceeding.

(b) Limitations.—

(1) Requirement that administrative remedies be exhausted.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

(2) Only costs allocable to the United States.—An award under subsection (a) shall be made only for reasonable litigation and administrative costs which are allocable to the United States and not to any other party.

(3) Exclusion of declaratory judgment proceedings.—

(A) In general.—No award for reasonable litigation costs may be made under subsection (a) with respect to any declaratory judgment proceeding.

(B) Exception for section 501(c)(3) determination revocation proceedings.—Subparagraph (A) shall not apply to any proceeding which involves the revocation of a determination that the organization is described in section 501(c)(3).

(4) Costs denied where party prevailing protracts proceedings.—No award for reasonable litigation and administrative costs may be made under subsection (a) with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted such proceeding.

(c) Definitions.—For purposes of this section—

(1) Reasonable litigation costs.—The term "reasonable litigation costs" includes—

(A) reasonable court costs, and

(B) based upon prevailing market rates for the kind or quality of services furnished—

(i) the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States,

(ii) the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and

(iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

(2) Reasonable administrative costs.—The term "reasonable administrative costs" means—

(A) any administrative fees or similar charges imposed by the Internal Revenue Service, and

(B) expenses, costs, and fees described in paragraph (1)(B), except that any determination made by the court under clause (ii) or (iii) thereof shall be made by the Internal Revenue Service in cases where the determination under paragraph (4)(B) of the awarding of reasonable administrative costs is made by the Internal Revenue Service. Such term shall only include costs incurred on or after the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals,

or (ii) the date of the notice of deficiency.

(3) Attorney's fees.—For purposes of paragraphs (1) and (2), fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or before the Internal Revenue Service shall be treated as fees for the services of an attorney.

(4) Prevailing party.—

(A) In general.—The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented, and

(iii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).

(B) Determination as to prevailing party.—Any determination under subparagraph (A) as to whether a party is a prevailing party shall be made by agreement of the parties or—

(i) in the case where the final determination with respect to the tax, interest, or penalty is made at the administrative level, by the Internal Revenue Service, or

(ii) in the case where such final determination is made by a court, the court.

(5) Administrative proceedings.—The term "administrative proceeding" means any procedure or other action before the Internal Revenue Service.

(6) Court proceedings.—The term "court proceeding" means any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court).

(7) Position of United States.—The term "position of the United States" means—

(A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and

(B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of—

(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or

(ii) the date of the notice of deficiency.