**In re John J. CAMACHO and Barbara A. Camacho, Debtors.**

**John J. CAMACHO and Barbara A. Camacho, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

Bankruptcy No. 93–3022.

Adv. No. A92–00798–001–DMD.

United States Bankruptcy Court, D. Alaska.

May 1, 1995.

G. Lyle, Anchorage, AK, for Camachos.

R. Branman, Washington, DC, for I.R.S.

### MEMORANDUM DECISION

DONALD MacDONALD, IV, Bankruptcy Judge.

This matter came on for trial Thursday, February 9, 1995. George Lyle appeared on behalf of the plaintiffs. Robert Branman appeared on behalf of the United States of America ("IRS"). Having heard the testimony, reviewed the exhibits, and considered the arguments of counsel, I find in favor of the IRS.

*Case Background*

Several of the issues in this case have previously been resolved by summary judgment. The findings of the court contained in the prior orders on summary judgment (Order Granting, in Part, and Denying, in Part, Cross–Motions for Summary Judgment, filed July 7, 1994; Order Granting, in Part, and Denying, in Part, Cross–Motions for Summary Judgment, filed December 2, 1994), are incorporated herein.

The remaining issue for trial is whether the IRS properly served a notice of intent to levy on the Camachos with respect to outstanding 1984 tax assessments, prior to levying on John Camacho's 1992 permanent fund dividend ("PFD"). The Camachos contend the IRS failed to properly give notice of intent to levy, resulting in an invalid levy on the 1992 PFD. Further, because the IRS received the PFD post-petition, the Camachos contend the IRS violated the automatic stay, entitling them to damages pursuant to 11 U.S.C. § 362(h).

On September 1, 1992, the IRS served a notice of intent to levy upon the Camachos with respect to their 1984 tax liability. On September 23, 1992, the IRS served a notice of levy on the State of Alaska Department of Revenue, Permanent Fund Division. This levy was directed against the 1992 permanent fund dividends of various taxpayers, including John Camacho. The parties agree that the September 1, 1992 letter the IRS served on the Camachos did not satisfy the notice requirements of 26 U.S.C. § 6331(d) because it did not provide the Camachos at least 30 days' notice prior to levying on the PFD. However, the IRS contends it served a prior notice of intent to levy on the Camachos, with respect to their 1984 tax liability, in October, 1990. The issues at trial were whether this notice was properly sent to the Camachos and whether it pertained to the Camacho's 1984 tax liability or other tax assessments which the IRS had abated.

*Analysis*

■ Prior to levying on assets of a taxpayer for unpaid taxes, the IRS is required to serve a notice consistent with 26 U.S.C. § 6331(d), which provides:

(d) Requirement of notice before levy.—

(1) In general.—Levy may be made under subsection (a) upon the salary or wages or other property of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy.

(2) 30–day requirement.—The notice required under paragraph (1) shall be—

(A) given in person,

(B) left at the dwelling or usual place of business of such person, or

(C) sent by certified or registered mail to such person's last known address

no less than 30 days before the day of the levy.

In other words, prior to a levy, the IRS must notify the taxpayer, in writing, of its intentions. Further, if the notice is served on the taxpayer by mail, it must be sent via certified or registered mail, to the taxpayer's last known address, and at least 30 days prior to the levy.

In this case, the IRS contends it complied with the notice requirements of § 6331(d) prior to levying on the Camacho's 1992 PFD because it sent a written notice of intent to levy to the Camachos via certified mail on October 19, 1990. A copy of the October, 1990, notice of intent to levy was not produced at trial. The IRS does not routinely retain copies of these notices. Instead, the IRS relied upon the following records to establish that the notice was sent: Certificate of Assessments and Payments (IRS Form 4340) for John J. and Barbara J. Camacho (Deft.Ex. A); a Certified excerpt of IDRS Certified Mail Listing with confidential material redacted for John J. and Barbara J. Camacho for tax period 1984 (Deft.Ex. B); and MFTRA print for John J. and Barbara J. Camacho for the 1984 tax year (Deft.Ex. E). The IRS's witness, Mr. Delwin G. West, testified regarding these records. Mr. West has been a tax examining assistant with the IRS for approximately ten years. His job duties include reviewing correspondence from taxpayers and notices sent by the IRS. I found Mr. West a credible witness.

Mr. West testified regarding the routine procedure used by the IRS's Ogden office for serving notices of intent to levy. He stated that a "fourth delinquency notice" is a form letter sent by the IRS which advises the taxpayer of the IRS's intent to levy if an account remains unpaid. This notice is also referred to as a "504 notice" or an "MF Stat–58" action. The IRS sends out thousands of these notices every week. The notices are prepared in batches on a given "run date," which date is earlier than the date actually given to and printed on the notice. Mr. West indicated that the notices are postdated to allow the IRS sufficient time to process them and get them to the Post Office, and still provide the taxpayer with the required 30 days notice prior to levy. He stated that the notices are usually placed in the mail three days prior to the date actually reflected on the notice.

After the notices are printed, they are separated, stuffed into envelopes with pertinent enclosures, and prepared for certified mailing. An "IDRS Certified Mail Listing" is prepared by the IRS, which contains the following information for notices prepared on a given "run date": the name and social security number of each taxpayer being sent a notice, the type of notice being sent and the type of tax and tax year, the zip code of the taxpayer, and the certified mail number for the notice. Once the notices are ready for mailing, they are taken to the Post Office with the IDRS Certified Mail Listing. A Postal Service representative then places the date the Post Office receives the notices on the IDRS certified mail listing, and signs the list.

Mr. West had no personal knowledge that a notice of intent to levy had been mailed to the Camachos. However, his testimony, based on his review of the defendant's exhibits and his general knowledge of the IRS procedure for mailing such notices, established the following:

1) A "fourth delinquency notice" dated October 22, 1990 was prepared by the IRS with reference to the Camacho's 1984 tax liability [Deft. Ex. A, p. 17].

2) The October 22, 1990 fourth delinquency notice was prepared by the IRS October 13, 1990 [Deft. Ex. B, p. 1].

3) The October 22, 1990 fourth delinquency notice to the Camachos, pertaining to 1984 assessed taxes, was received by the United States Postal Service for mailing on October 19, 1990 [Deft. Ex. B, p. 2].

4) The October 22, 1990 fourth delinquency notice was sent via certified mail No. P904 180 000 to the Camachos at an address in Hawaii [Deft. Ex. B, p. 1].

5) Prior tax assessments for the Camacho's 1984 tax year had been abated before the October 22, 1990 fourth delinquency notice was prepared by the IRS [Deft. Ex. A, p. 16, Ex. E, pp. 2–3].

6) The October 22, 1990 fourth delinquency notice pertained to 1984 taxes assessed against the Camachos on August 27, 1990 for a tax deficiency of $22,142.00 and interest of $16,697.40, or a total assessment of $38,839.40 [Deft. Ex. E, pp. 3–4].

Mr. West's testimony and the defendant's exhibits establish that a written notice of intent to levy, dated October 22, 1990, was sent via certified mail to the Camachos on October 19, 1990. The written notice pertained to 1984 tax assessments totalling $38,839.40, and was sent to an address for the Camachos in Hawaii. The notice provided the Camachos was sent consistent with the general procedure followed by the IRS for serving notices of intent to levy.

■ The October 22, 1990 notice will satisfy the requirements of § 6331(d) provided it was sent to the "last known address" for the Camachos at that time. The Camachos testified that at the end of 1989 they moved from Valdez to Anchorage. In the summer of 1990, they moved to a trailer park located at 1200 Dimond Boulevard in Anchorage, and they have received most of the notices sent by the IRS at that address. However, the Camachos also own a home in Hawaii, which they built in 1985. The Camachos often vacation in Hawaii over the Christmas holidays. Also, after their move from Valdez, in the summer of 1990, Mr. Camacho was residing in Anchorage and his wife was staying at the house in Hawaii. When the Camachos filed their 1989 tax return, on July 22, 1990, they listed their mailing address as P.O. Box 1686, Kailua–Kuna, Hawaii 96745.

A taxpayer's last known address is that on his most recent return, unless the taxpayer communicates to the IRS "clear and concise" notice of a change of address.

*United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.1984), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984) (citations omitted).

There is no evidence that the Camachos served the IRS with a notice of change of address between the time they filed their 1989 tax return and the time the IRS sent the October 22, 1990 notice. The zip code of "96745" indicated on the Camacho's 1989 tax return, which was filed in July, 1990, is the same zip code that is indicated on the IRS's Exhibit B, the IDRS Certified Mail Listing pertaining to the mailing of the October 22, 1990 fourth delinquency notice. Accordingly, I conclude that the fourth delinquency notice was served on the "last known address" of the Camachos, as reflected on their 1989 tax return. Therefore, the October 22, 1990 fourth delinquency notice satisfies the requirements of § 6331(d). Since this notice was served more than 30 days prior to the 1992 levy on John Camacho's PFD, the IRS's levy was valid.

■ The Camachos have raised several issues which fail to rebut the IRS's contention that proper notice of intent to levy was sent. First, the Camachos testified that they did not receive the October 22, 1990 fourth delinquency notice. However, I feel that the IRS has met its burden of proof and established that the notice was sent.

The burden of showing something by a "preponderance of the evidence," the most common standard in the civil law, "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.' "

*Concrete Pipe & Prod. v. Const. Laborers Pension Trust,* —— U.S. ——, ——, 113 S.Ct. 2264, 2279, 124 L.Ed.2d 539 (1994), citing *In re Winship,* 397 U.S. 358, 371–372, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Based on the record presented at trial, I feel it is more probable than not that the IRS did serve the October 22, 1990 notice via certified mail to the Camachos' last known address. Since the notice was properly given, it is not invalidated because the Camachos did not receive it. *See United States v. Zolla,* 724 F.2d at 810 [a notice of deficiency properly sent via certified mail to taxpayer's last known address is valid even if taxpayer doesn't receive it].

■ Next, the Camachos attempted to refute the IRS's contention that proper notice was sent by showing that the IRS has no established, written procedures governing the sending of notices of intent to levy. None of the IRS personnel who testified were aware of any written procedures, either in internal manuals or IRS regulations, for the sending of such notices. However, I don't feel the existence of a written procedure is necessary to validate the general procedure to which Mr. West testified.

■ The Camachos also relied on *United States v. Arford,* 71 A.F.T.R.2d 93–718, 1993 WL 120365 (D.Idaho 1993), *aff'd on other grounds,* 43 F.3d 1480, 75 A.F.T.R.2d 95–333 (9th Cir.1994), to support their position that the IRS could not establish a certified mailing. In that case, the IRS attempted to show that a fourth delinquency notice had been sent via certified mail on the basis of testimony of an IRS employee who stated that it was "the normal business practice" of the IRS to do so. The court in *Arford* found that this testimony did not entitle the IRS to a presumption that the notice had been sent via certified mail. The court discussed the IRS's use of "Postal Form 3877" for the mailing of notices of deficiency, which must also be sent via certified mail, and noted that

the Ninth Circuit and other courts have found these forms to be "highly probative evidence that the certified mailing requirement was satisfied." *Id.* The court stated that there seemed to be no reason why the IRS couldn't use Postal Form 3877, "or some similar type of form," for notices of intent to levy. *Id.*

In this case, the fact of certified mailing has been established through more than an IRS employee's testimony as to general business routine. I feel that the IDRS Certified Mail Listing is a form similar to the Postal Form 3877 sufficient to establish that the notice of intent to levy was served via certified mail.

■ The Camachos also take issue with the fact that the IRS prepared only one notice of balance due with respect to the 1984 $38,839.40 assessment against them prior to the time the IRS's fourth delinquency notice of October 22, 1990 was prepared [Pltf. Ex. 1, Ex. 6, p. 21]. The Camachos placed great importance on the fact that the IRS routinely sends four notices to a taxpayer prior to the "fourth delinquency notice" which advises of an intent to levy. However, several of the IRS personnel who testified at trial indicated that a taxpayer's account could be accelerated and some of the routine notices skipped in certain instances, including instances where a taxpayer was already delinquent for prior tax years. Further, the treatises the Camachos introduced for impeachment purposes failed to persuade the court that the IRS follows this routine in all instances.[1] Finally, as there is no statutory requirement that the IRS send at least four notices prior to levying, the IRS's failure to serve the Camachos with additional notices does not affect the validity of the October 22, 1990 fourth delinquency notice.

■ Next, the Camachos note that a copy of the October 22, 1990 notice was not sent to their attorney, Mr. Lyle. Mr. Lyle had

---

1. For example, plaintiff's Exhibit 14, consisting of excerpts from Michael I. Saltzman, *IRS Practice and Procedure* (2nd ed. 1991), simply states that IRS computers are "programmed" to send a series of notices to individual taxpayers. The portion of Saltzman's treatise admitted into evidence deals with the IRS's normal routine and

does not discuss exceptions which may interrupt this computer programmed routine. Further, a review of plaintiff's Exhibits 16 and 17, which were introduced but not admitted at trial, simply states that the IRS gives the taxpayer at least two and "often up to four" notices demanding payment prior to levy.

---

mailed a letter to the Anchorage office of the IRS dated October 2, 1990, enclosing a revised Power of Attorney form directing that he be notified of 1984 assessments pertaining to the Camachos [Pltf. Ex. 18]. Mr. West testified that it usually takes two to four weeks for such information to be processed by the IRS. In fact, this power of attorney was not input into IRS computer records and posted to the Camacho's account until November 30, 1990. In the interim, the October 22, 1990 notice was sent to the Camachos at their Hawaii address. However, under the circumstances present here, I do not find that the notice was defective because it was not also served on Mr. Lyle. The notice was prepared on October 13, 1990, in Ogden, Utah, just 11 days after the date of Mr. Lyle's letter to the Anchorage IRS office.[2] There was insufficient time for the IRS to process the power of attorney prior to the mailing of the October 22, 1990 notice.

Finally, the Camachos contend the levy on the 1992 PFD was invalid, even if notice of intent to levy was properly given, because the IRS included liabilities other than the Camacho's 1984 tax year in the levy. The evidence reflects that at the time the IRS Permanent Fund Coordinator, Ina Guisinger, prepared the notice of levy for the 1992 PFD, her database showed that the Camachos owed in excess of $163,000 for all tax years. However, the State of Alaska was not provided with this information. According to Ms. Guisinger's affidavit, Plaintiff's Exhibit 5, the amount indicated on the PFD levy to the State of Alaska was limited to $9,999 per taxpayer listed on the levy, including John Camacho, because the State's procedures only allow for four figures. While Ms. Guisinger did testify that she "assumed" the levy on the Camacho's 1992 PFD included tax years other than 1984, the computer information used by Ms. Guisinger to prepare the PFD levy reflected only the 1984 tax year [Pltf. Ex. 12]. Finally, although the IRS customarily applies PFDs which it receives after levy to a taxpayer's earliest tax liability, in this instance the IRS applied the PFD to the Camachos' 1984 tax liability rather than a prior year. In sum, the record before me reflects an IRS levy on John Camacho's 1992 PFD to satisfy 1984 tax delinquencies. The Camacho's claim of an improper levy is not supported by the evidence.

The last issue to be addressed is whether the IRS has violated the automatic stay by receiving and retaining the 1992 PFD post-petition. In the Order Granting, in Part, and Denying, in Part, Cross–Motions for Summary Judgment, filed December 2, 1994, I indicated that I did not feel the record reflected a willful violation of the automatic stay on the part of the IRS, but that I would further review this issue after trial. Considering the entire record, I conclude that the IRS has not willfully violated the automatic stay. The IRS conducted a valid levy against John Camacho's 1992 PFD prior to the time the Camachos filed bankruptcy. The State of Alaska remitted the PFD to the IRS post-petition in response to the levy. Under these circumstances, I find that the IRS's conduct does not entitle the Camachos to damages under 11 U.S.C. § 362(h).

*Remaining Issues*

In their complaint, the Camachos also ask the court to order a refund of all amounts they have paid the IRS on account of the Sente Equipment, Ltd. audit and seek an award of attorney's fees and costs.

The bankruptcy court cannot determine the Camacho's right to a refund until after they have made a proper request for a refund to the IRS. 11 U.S.C. § 505(a)(2)(B). The prerequisites contained in § 505(a)(2)(B) are "nonwaivable jurisdictional requirements." *In re Graham,* 981 F.2d 1135, 1138 (10th Cir.1992). There is nothing in the record to indicate the Camachos have made a proper request for refund from the IRS.[3] Further, the IRS may be entitled to seek a setoff of at least a portion of the refund

---

2. There is nothing in the record to establish when the IRS received Mr. Lyle's letter.

3. Although the Camacho's complaint alleges that they filed an IRS Form 1040X seeking a refund of taxes, their exhibits to the complaint make it clear that the Form 1040X pertained to adjustments to the Utah Bioresearch assessments rather than the Sente Equipment, Ltd. assessments.

which the Camachos seek against other outstanding tax liabilities. Accordingly, the Camacho's request for a refund will be dismissed, without prejudice.

■ The Bankruptcy Appellate Panel has held that a bankruptcy court may award attorney's fees under 26 U.S.C. § 7430. *In re Germaine (United States v. Germaine),* 152 B.R. 619, 627 (9th Cir. BAP 1993). The Ninth Circuit has noted, without resolving the issue, that there is a split among the Circuits as to whether bankruptcy courts may award fees under § 7430. *In re Cascade Roads, Inc. (United States v. Arkison),* 34 F.3d 756, 767–768, n. 12 (9th Cir.1994).

[A] "prevailing party" may be awarded reasonable administrative and reasonable litigation costs if the party has: (1) exhausted the administrative remedies; (2) established that the IRS's position in the proceeding was not substantially justified; (3) substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; .... 26 U.S.C. § 7430(b) and (c).

*In re Germaine,* 152 B.R. at 627. "Under § 7430 a prevailing party must exhaust his or her administrative remedies to recover fees." *Smith v. Brady,* 972 F.2d 1095, 1100 (9th Cir.1992).

The Camachos prevailed on the significant issues presented in this case. However, even assuming that the Camacho's protracted negotiations with the IRS prior to the filing of their bankruptcy and the initiation of this adversary proceeding exhausted administrative remedies, I feel an award of fees is not permitted under § 7430, because the Camachos have failed to establish that the position of the IRS was not substantially justified.

The statutory phrase "substantially justified" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. [552] at 565, 108 S.Ct. [2541] at 2250 [101 L.Ed.2d 490 (1988) ]. "That is no different from the 'reasonable basis both in law and fact' formulation ... To be 'substantially justified' means, of course, more than merely

undeserving of sanctions for frivolousness ..." *Id.* at 565–66, 108 S.Ct. at 2550. *Huffman v. C.I.R.,* 978 F.2d 1139, 1147–48 (9th Cir.1992). Because this case involved unsettled legal issues, I cannot conclude that the positions which the IRS took in this proceeding were unjustified. Therefore, each party will bear its own attorney's fees and costs.

*Conclusion*

The IRS served a notice of intent to levy on the Camachos with respect to their 1984 tax liability on October 19, 1990. The notice of intent to levy satisfied the requirements of 26 U.S.C. § 6331(d). Accordingly, the IRS's levy on John Camacho's 1992 permanent fund dividend is valid, and the IRS holds a perfected lien against the 1992 Permanent Fund Dividend.

An order and judgment shall be entered consistent with this memorandum decision and with the prior findings of this court contained in the Order Granting, in Part, and Denying, in Part, Cross–Motions for Summary Judgment, filed July 7, 1994, and the Order Granting, in Part, and Denying, in Part, Cross–Motions for Summary Judgment, filed December 2, 1994.