**In re Merritt YOCHUM and Rose Marie Yochum, Debtors.**

**UNITED STATES of America, Appellee,**

**v.**

**Merritt YOCHUM and Rose Marie Yochum, Appellants.**

No. 95–15871.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1996.

Decided July 16, 1996.

David Horton, Carson City, Nevada, for appellants.

Gary R. Allen and Teresa T. Milton, Tax Division, United States Department of Justice, Washington, D.C., for appellee.

Before: REINHARDT and HALL, Circuit Judges, and MERHIGE, District Court Judge.*

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellants Merritt Yochum and Rose Marie Yochum appeal from the district court's order denying them attorneys' fees and costs pursuant to 26 U.S.C. § 7430. The district court had jurisdiction under 28 U.S.C. § 157(c)(1) and this court has jurisdiction over the Yochums' timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I.

From 1977 to 1985, Merritt Kent Yochum and Rose Marie Yochum, a married couple, failed to file federal income tax returns. During the years in question, the Yochums operated two profit-seeking ventures: the first was a business called Carson Iron Works and the second was a fishing vessel christened the "Liberty."

### A. *The Yochums' Bankruptcy*

In May 1987, the Yochums filed for Chapter 7 bankruptcy. Soon thereafter, the IRS filed proofs of claim that included the Yochums' unpaid income tax liabilities for the years 1977 to 1985. The bankruptcy court ordered the Yochums to file their outstand-

---

* Hon. Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

ing tax returns; those returns were filed in August 1987.

On January 6, 1988, the Yochums filed an objection to the IRS' proof of claim. Throughout most of that year, the government and the Yochums attempted to negotiate the actual amount of taxes due. For example, in July 1988, the government sent the Yochums a written audit report prepared by the IRS. That report disallowed a number of losses and deductions for lack of documentation.

By November 1988, the government and the Yochums had worked out a number of issues, and only three principal questions remained. First, the parties disputed the adjusted basis in the sale of Carson Iron Works, which was sold for $250,000 in 1980. Second, the parties were at odds over the amount of labor costs that the Yochums reported. Third and finally, the government disputed the Yochums' treatment of the proceeds from a 1979 sale of Napa Valley property.

Over a period of eight months, the bankruptcy court held four days of hearings to address the issues in dispute. At the November 2, 1988 hearing, the Yochums' accountant testified that the discrepancy between the wages reported on the Yochums' tax returns and 940 forms was due to her method of classifying the wages and payroll taxes paid out by the Yochums. Upon hearing the Yochums' explanation, the government dropped this claim.[1] Similarly, after the Yochums produced documentation to support their tax treatment of the Napa Valley property sale, the government dismissed that claim.

The primary issue in dispute remained the correct basis in the Iron Works. The Yochums argued that the basis was the total cost of acquiring and improving the property. However, they provided practically no independent evidence of this basis.

The government argued that the correct basis was the fair market value of the property in 1980. In reaching this conclusion, the IRS noted that the Iron Works had originally been owned by Great Basin Distributors, a corporation in which Merritt Yochum was the sole shareholder. In 1978, the property was transferred from Great Basin to the Yochums in a liquidating distribution. Thus, the government argued that the Yochums should have recognized gain at the time of the 1978 liquidation, and that the basis in 1980 was the fair market value at the time of the distribution from the corporation.

On October 23, 1989, the bankruptcy court issued an order holding pursuant to sections 331 and 334 of the Internal Revenue Code, at the time of the distribution, the fair market value of the property was $180,000 and the Yochums' cost of stock was $17,500. Deducting the cost of stock from the fair market value of the property, the court found that the stepped up basis of the property was $162,500.

The court went on to note that the property was sold for $250,000 in 1980 and took judicial notice of the fact that inflation and real estate prices were very high during this period. Thus, the court deducted $10,000 of mortgage debt from the sale price, reducing it to $240,000. Subtracting the adjusted basis of $162,500 from $240,000 equalled $77,-500, which the court held should have been reported as capital gains for the 1980 tax year.

The court also found that the Yochums' basis in the machinery and equipment sold with the Iron Works property was $47,661.[2] Thus, subtracting $47,661 from the sales price of $85,000, the court determined that the Yochums realized a $37,339 gain on the sale of the equipment versus the $95,000 loss which they had reported on their taxes.

## B. *Taxes owed by the Yochums*

Following the issuance of the bankruptcy court's order, protracted negotiations over the amount of taxes owed by the Yochums ensued. On July 19, 1990, the Yochums filed an amended plan of reorganization which included an amount owed to the IRS, but the

---

1. The explanation also prompted the court to observe that Yochums' counsel "should have had these figures before the trial started maybe."

2. The Yochums contended the correct basis was $180,000.

government objected to this amount. Two years later, the Yochums filed a motion seeking to deposit the disputed amount of $1,118.23 into the court registry. The government renewed its objection because that amount did not account for interest and penalties potentially due to the IRS.

On May 5, 1992, the bankruptcy court entered an order approving the taxpayers' amended plan of reorganization, from which the IRS appealed. On May 20, 1992, the bankruptcy court ordered the Yochums to pay $1,475.11 to the IRS. The government also appealed this order and filed a motion for clarification which the bankruptcy court denied. The government then dismissed all of its appeals.

### C. *Attorneys' fees*

On September 8, 1992, the Yochums filed a motion for an award of litigation costs, including attorneys' fees. On January 6, 1993, the bankruptcy court awarded the Yochums fees in the amount of $31,237.05 pursuant to 26 U.S.C. § 7340. The government appealed to the district court.

On July 3, 1993, the district court issued an order finding that the bankruptcy court lacked jurisdiction to award attorneys' fees because the bankruptcy court was not a "court of the United States" for purposes of section 7430. *In re Yochum*, 156 B.R. 816, 818 (D.Nev.1993). Following the holding in *In re Brickell Inv. Corp.*, 922 F.2d 696 (11th Cir.1991), the district court held that there were two possible means by which the bankruptcy court might resolve attorneys' fees issues: The bankruptcy court could hear argument in the matter and submit proposed findings of fact and conclusions of law to the district court. The district court could then adopt the proposed findings and render final judgment. *Yochum*, 156 B.R. at 819; *Brickell*, 922 F.2d at 701. Or, if parties offered their express consent to adjudication before the bankruptcy court pursuant to 28 U.S.C. § 157(c)(2), the bankruptcy court could hear and decide the matter. *Id.*

In this instance, the district court decided to treat the bankruptcy court's order as proposed findings of fact and conclusions of law, but remanded for further determination of why the IRS' actions were not substantially justified.

The bankruptcy court held a hearing on the matter on December 9, 1993, and on June 17, 1994, issued an order finding that the IRS' position during litigation was not substantially justified. The court noted that following litigation, it had determined that the Yochums owed no income tax and only $1,474.11 in social security taxes. The bankruptcy court also held that the IRS' positions as to the tax treatment of the Yochums' ship, the Iron Works, and the Napa Valley property were not substantially justified.

The government challenged the order, and on appeal, Judge Reed declined to adopt the bankruptcy court's proposed findings of fact. In an opinion delivered from the bench, Judge Reed concluded that the bankruptcy court had misconstrued the burden of proof; instead of placing it on the debtor, it appeared that the bankruptcy court placed the burden on the government to show its position was substantially justified.

He also noted that the bankruptcy court seemed to base its holding "on the way the case turned out, because it turned out that there were no taxes owed." Furthermore, he observed that the "IRS in this case had to operate in a vacuum before the returns were filed, and even after the returns were filed, there were many things that had to be sought out and determined and dug up and information to be obtained." Thus, because he did not believe the bankruptcy's holding was supported by the record, Judge Reed ordered that the proposed findings of fact and conclusions of law be disapproved and denied the Yochums' request for litigation costs. This appeal then followed.

## II.

As a preliminary matter, we note that the district court's opinion in *Yochum* creates an intra-circuit conflict which we must resolve. Where *Yochum* concludes that the bankruptcy court lacks jurisdiction to award attorney's fees, 156 B.R. at 818, *In re Germaine*, 152 B.R. 619 (9th Cir. BAP 1993), holds that the bankruptcy court does possess the authority to assess such fees under

§ 7430. 152 B.R. at 627. This intra-circuit conflict mirrors the circuit split. *Compare In re Brickell Inv. Corp.*, 922 F.2d 696, 701 (11th Cir.1991) (bankruptcy court is not a "court of the United States" within meaning of section 7430 therefore lacks authority to award attorney's fees) *with In re Grewe*, 4 F.3d 299, 304 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994) (because bankruptcy court is unit of district court, it is a "court of the United States" and has power to assess attorney's fees under section 7430).[3]

■ Although neither party squarely addresses the issue of jurisdiction in its briefs, we have the discretion to resolve this question on appeal. *See United States v. Northrop*, 59 F.3d 953, 957 n. 2 (9th Cir.1995) (holding that the court can exercise its discretion to consider an issue not raised below when it is a "purely legal question" and "the record relevant to the matter is fully developed"). Because of the conflict between *Yochum* and *Germaine*, we choose to exercise that discretion here.

### A.

■ When interpreting a statute a court first must examine the statutory language. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). If the language of the statute is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances. *In re Perroton*, 958 F.2d 889, 893 (9th Cir.1992). Moreover, in statutes that contain statutory definition sections, it is commonly understood that such definitions establish meaning wherever the terms appear in the same Act. *Id.*

Section 7430 states that "[i]n any administrative or court proceeding, which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty ... the prevailing party may be awarded judgment or a settlement for" (1) reasonable administrative costs, and (2) reasonable litigation costs. 26 U.S.C. § 7430(a). Subsection (c)(6) defines a "court proceeding" as "any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court)." 26 U.S.C. § 7340(c)(6).

It is unclear from the language of this subsection whether Congress intended to include bankruptcy courts. On the one hand, the language of the statute is broad: it refers to "any civil action" in a "court of the United States." Yet, the language also seems to be limiting because it makes special reference to the Tax and Claims Court, but does not include the bankruptcy courts.

Courts interpreting Section 7430 have taken two opposite positions. The Eleventh Circuit has opted for a limited and narrow reading of the subsection. In *Brickell*, the court reasoned that if Congress had wanted to include bankruptcy courts under the statute, it would have made specific mention of them just as specific reference was made to the Tax and Claims Court. 922 F.2d at 701.

*Brickell* based its holding on a line of Eleventh Circuit cases interpreting the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA).[4] In *In re Bowen*, 706 F.2d 1087, 1088 (11th Cir.1983), the court held that for purposes of the EAJA, the Tax Court could not award attorneys' fees because it was not defined as "a court of the United States" in 28 U.S.C. § 451, the definitional

---

**3.** Existence of both an intra- and inter-circuit split was previously recognized by this Circuit in *In re Cascade Roads, Inc.*, 34 F.3d 756, 767 n. 12 (9th Cir.1994). The court in *Cascade Roads* did not address the issue, however, because in that case the district court, not the bankruptcy court, authorized the award of attorney's fees.

**4.** Prior to Section 7430's enactment, the EAJA was the primary means by which parties could claim attorneys' fees and litigation costs against the United States. The statutes have similar provisions and have been interpreted by courts con-

sistently. *See In re Germaine*, 152 B.R. at 625 n. 6 (noting parallel structure of the two statutes); *see also Powell v. CIR*, 791 F.2d 385, 390 (5th Cir.1986) ("Absent some compelling reason to read differently analogous phrases in the Internal Revenue Code and Equal Access to Justice Act authorizing recovery of attorney's fees by the prevailing party, they should be interpreted consistently.").

In cases involving tax matters, section 7430 now supplants the EAJA. 28 U.S.C. § 2412(e); *In re Cascade Roads, Inc.*, 34 F.3d at 769.

section of Title 28.[5] In particular, the *Bowen* court noted that the legislative history of the EAJA indicated that Congress explicitly excluded the Tax Court. *Id.*

Similarly, *In re Davis*, 899 F.2d 1136 (11th Cir.1990), held that the EAJA empowered only courts as defined by 28 U.S.C. § 451 to award attorneys' fees. *Id.* at 1139. Because bankruptcy courts were not listed in 28 U.S.C. § 451, and because the Supreme Court had previously held that bankruptcy courts were not Article III courts, *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60–61, 102 S.Ct. 2858, 2865–66, 73 L.Ed.2d 598 (1982), the *Davis* court concluded that bankruptcy courts lacked jurisdiction to award attorneys' fees under the EAJA.

Noting that section 7430 and the EAJA were similarly worded statutes, the *Brickell* court adopted the analysis of *Davis* and *Bowen*, and concluded that bankruptcy courts could not award fees under section 7430. The *Brickell* court held that with regards to the award of attorneys' fees under section 7430, the bankruptcy court was limited to two courses of action: It could either (1) submit proposed findings of fact and conclusions of law to the district court with the final judgment to be rendered by the district court after reviewing the proposed findings and conclusions under a de novo standard of review, *id.* at 701, or (2) if the parties expressly consented to the bankruptcy court's jurisdiction over the attorneys' fees issue, pursuant to Bankruptcy Rule 7012(b), the bankruptcy court could hear the matter itself. *Id.* at 702.

The Fourth Circuit, and a majority of bankruptcy courts, have taken a different tack. In *In re Grewe*, 4 F.3d 299 (4th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994), the court first observed that the bankruptcy courts operated as units of the district courts and derived their jurisdiction from 28 U.S.C. § 157(a), which grants district courts the discretion to

refer bankruptcy matters to the bankruptcy courts. *Id.* at 304. Because district courts are "court[s] of the United States" and "bankruptcy courts are not separate from, but rather units or divisions of the district court," the *Grewe* court concluded that "Congress also intended bankruptcy courts to qualify as 'court[s] of the United States' under § 7430(c)(6)." *Id.*

Furthermore, the court was not persuaded that the parenthetical reference to the Tax and Claims Court precluded inclusion of the bankruptcy courts. Rather, it argued that because the Tax and Claims Courts are Article I courts, Congress had to make special reference to them in the statute. On the other hand, because bankruptcy courts were units of the district court, the *Grewe* court argued that Congress did not need to make a specific reference to them. *Id.* at 304.

The reasoning in *Grewe* has been followed by a majority of bankruptcy courts. *In re Chambers*, 140 B.R. 233, 237 (N.D.Ill.1992) (Section 7430's language includes bankruptcy courts); *Williams v. IRS*, 179 B.R. 929, 934 (Bankr.D.Mont.1995) (following *Grewe* ); *In re Abernathy*, 150 B.R. 688, 693–94 (Bankr. N.D.Ill.1993) (same); *In re Evans*, 188 B.R. 598, 602 (Bankr.D.Neb.1995) (same); *In re Brooks*, 175 B.R. 409 (Bankr.S.D.Ala.1994). *But see, In re Sneller*, 153 B.R. 343, 345 (Bankr.M.D.Ala.1993) (adopting reasoning of *Brickell* ). It also corresponds with the Tenth Circuit's holding that bankruptcy courts may award fees under the EAJA. *O'Connor v. Dep't of Energy*, 942 F.2d 771, 774 (10th Cir.1991) (rejecting *Davis* and *Brickell*; and finding that plain meaning of term "court" as used in the EAJA included bankruptcy court); *accord In re Transcon Lines*, 178 B.R. 228, 232 (Bankr.C.D.Cal. 1995) (bankruptcy court may award fees under EAJA); *In re Tom Carter*, 159 B.R. 557, 561 (Bankr.C.D.Cal.1993) (same).

■ We adopt the reasoning of the Fourth Circuit and reject *Brickell* for six reasons. First, Congress' specific inclusion of the Tax

**5.** Section 451 states that:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of Claims, the Court of Customs and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior. 28 U.S.C. § 451.

Court and United States Claims Court does not preclude a broader reading of the statute. As other courts have noted, in terms of statutory construction, use of the word "includes" does not connote limitation. "In definitive provisions of statutes and other writings, 'include' is frequently, if not generally used as a word of extension or enlargement rather than as one of limitation or enumeration." *American Surety Co. of New York v. Marotta,* 287 U.S. 513, 517, 53 S.Ct. 260, 261, 77 L.Ed. 466 (1933); *see also Federal Land Bank of St. Paul v. Bismarck Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 4, 86 L.Ed. 65 (1941) ("[T]he term 'including' is not one of all-embracing definition, but simply connotes an illustrative application of the general principle."). Thus, while the statute "includes" only the Tax Court and Claims Court, the statutory language itself does not limit the statute's application only to these courts and district courts.[6]

Second, the legislative history suggests that Congress intended the statute to have broad application. The Conference Report on the amendment notes that "a taxpayer who prevails in civil tax litigation in the *federal courts,* including the U.S. Tax Court, may be awarded reasonable attorney fees and other litigation costs." H.R. Conf. Rep. 97–760, 98th Cong., 2d. Sess. (1982), *reprinted in,* 1982 U.S.C.C.A.N. 781, 1449 (emphasis added). Use of the term "federal courts," not just "courts of the United States," implies that Congress did not mean to constrict the statute's application to only

Article III courts because "federal court" has been defined as "courts of the United States (as distinguished from state, county, or city courts) as created either by Art. III of U.S. Constitution, or by Congress." *Black's Law Dictionary* 611 (6th ed.1990); *see also Webster's Ninth New Collegiate Dictionary* 454 (9th ed.1985) (defining "federal court" as "a court established by authority of a federal government; esp.: one established under the constitution and laws of the U[nited] S[tates].")

Third, because bankruptcy courts are units of the district court, they are covered under the statute's aegis. Congress initially created the bankruptcy courts in the Bankruptcy Reform Act of 1978. Congress intended that the courts be "functionally independent" of the district courts. S.Rep. No. 989, 95th Cong., 2d Sess. 16 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 5787, 5801. However, in 1982, the Supreme Court struck down the statute because it "impermissibly removed most, if not all, of the essential attributes of the judicial power from the Art. III district court, and has vested those powers in a non-Art. III adjunct." *Northern Pipeline,* 458 U.S. at 87, 102 S.Ct. at 2880.

Congress responded by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, 98 Stat. 333. Rather than making the bankruptcy courts "functionally independent" of the district courts, this Act classified the bankruptcy

---

**6.** Moreover, Congress' addition of the Tax and Claims Court may have been a way of rectifying omissions in the EAJA, which section 7430 amended.

The EAJA excluded the Tax Court, and the legislative history to section 7430 made particular reference to this fact. H.R. Conf. Rep. 97–760, *reprinted in,* 1982 U.S.C.C.A.N. at 1449 (noting that the EAJA did not allow a civil litigant who prevailed in Tax Court to seek reasonable attorneys' fees and costs). Thus, section 7430 specifically included the Tax Court to rectify this omission. H.R. Conf. Rep. 97–760, 1982 U.S.C.C.A.N. at 1449; *Bowen,* 706 F.2d at 1088. It would have been odd indeed if Congress had authorized a statute whereby civil litigants in a tax matter could recoup attorney's fees and costs in any federal court, except the Tax Court.

The Claims Court was added to the statute in 1984. The House Report on the amendment states that:

On October 1, 1982, (after enactment of [the statute]), the U.S. Claims Court was reorganized, creating a new United States Claims Court as an Article I court. Because of this reorganization, the question has arisen whether the Claims Court is a 'court of the United States' for purposes of the attorney's fee provisions ... The bill clarifies that the attorney's fee provisions of [the statute] apply in tax cases in the Claims Court.

House Report No. 98–432, Part II, 98th Cong., 2d Sess. 3 (1984), *reprinted in,* 1984 U.S.C.C.A.N. 697, 1262. Thus, where there was a specific question as to the statute's application, Congress amended the statute. But, Congress may not have deemed it necessary to amend Section 7430 to include bankruptcy courts because they are units of the district courts. *See* discussion, infra.

court as a unit or division of the district court. 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court of that district."); *Grewe,* 4 F.3d at 304 (citing 1 Collier on Bankruptcy § 3.01[2][a] (15th ed.1993)); *accord In re Volpert,* 177 B.R. 81, 87 (Bankr.N.D.Ill.1995) ("... under present law, 'bankruptcy courts' no longer exist as separate jurisdictional or legal entities ... Instead, bankruptcy judges are by statute judicial officers of the district court to which matters within their jurisdiction may be delegated."); *In re Chambers,* 140 B.R. at 238 (same); *In re Northwest Cinema Corp.,* 49 B.R. 479, 480 (Bankr.D.Minn.1985) ("... [T]here really is no bankruptcy court except in name. The term 'bankruptcy court' is solely a phrase that is applied to the bankruptcy judges insofar as these judges together are a unit of the district court. 28 U.S.C. § 151. Thus while functionally there may appear to be a separate bankruptcy court, for jurisdiction purposes there is only one court, i.e. the district court.").

Because bankruptcy courts are units of the district court, they are by analogy "courts of the United States" as defined by section 7430 and therefore possess the power to award attorneys' fees. As the *Grewe* court observed, "because bankruptcy courts are, for jurisdictional purposes, inseparable from the district court, we believe Congress did not think it necessary to specifically include them in this statute." 4 F.3d at 304. Conversely, the Tax and Claims courts needed to be specifically included because they were non-Article III courts *and* "independent judicial bodies." *Id.; accord Chambers,* 140 B.R. at 237.

Fourth, the policy concerns animating the statute militate in favor of inclusion, rather than exclusion of bankruptcy courts. Section 7430 requires parties to exhaust administrative remedies within the IRS before seeking judicial relief. 26 U.S.C. § 7430(b)(1). If the bankruptcy courts did not qualify as "court[s] of the United States," the Fourth Circuit has argued, and we agree, that the requirements of section 7430 would not apply when "parties seek to resolve their tax dis-

putes with the IRS by filing suit in a bankruptcy court. Under this scenario, parties could avoid the exhaustion requirement imposed by § 7430(b)(1) and still recover attorneys' fees under the EAJA." *Grewe,* 4 F.3d at 305. Like our sister circuit, we doubt that Congress wanted to create such a loophole, therefore we conclude that Congress intended to include bankruptcy courts within the confines of subsection 7430.

Fifth, contrary to the district court's position in *Yochum,* the holding in *In re Perroton,* 958 F.2d 889, 896 (9th Cir.1992), does not preclude application of the statute to bankruptcy courts. In *Perroton,* the court was faced with the issue of whether bankruptcy courts could waive filing fees for debtors filing under in forma pauperis status pursuant to 28 U.S.C. § 1915(a). The court concluded that Title 28's definitional section, 28 U.S.C. § 451, did not include bankruptcy courts as a "court of the United States." *Id.* at 893. Therefore, the court held that bankruptcy courts could not waive filing fees under § 1915(a).

*Perroton* is distinguishable because 28 U.S.C. § 451 does not apply to the Internal Revenue Code, Title 26 of the United States Code. As *Perroton* itself observed, "in statutes that contain a definition section it is commonly understood that such definitions establish meaning where the terms appear in that *same Act.*" 958 F.2d at 893 (emphasis added). Title 26 has its own definitional section, and is therefore distinct from Title 28.

■ Sixth and finally, awarding attorneys' fees can be construed as a core proceeding over which the bankruptcy court has jurisdiction. The bankruptcy courts' jurisdiction is limited to "core" proceedings, a term for which no exact definition exists. 28 U.S.C. § 157(b)(2) (providing a non-exhaustive list of matters deemed to be core proceedings); *In re Cinematronics, Inc.,* 916 F.2d 1444, 1449–50 (9th Cir.1990) (observing that section 157(b)(2) provides a "laundry list of core proceedings along with the admonition that core proceedings include 'but are not limited to,' the items listed").

In *Brickell* and *Davis,* the Eleventh Circuit opined that the award of attorney's fees

under section 7430 and the EAJA, respectively, was not a core proceeding, but instead was a "related" matter. *Davis,* 899 F.2d at 1140–41; *Brickell,* 922 F.2d at 701. "If the proceeding does not involve a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Davis,* 899 F.2d at 1141 (quoting *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)).

■ In determining whether a matter is a non-core proceeding, we look to a variety of factors "such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Cinematronics,* 916 F.2d at 1450 n. 5.

Here, the right to attorneys' fees does not exist independent of the bankruptcy proceeding, the resolution of this issue does not depend on state law, and the right to fees did not exist prior to the bankruptcy. Rather, it emanates from the bankruptcy itself. As another court has observed, these types of fee petitions essentially "arise in the context of a bankruptcy proceeding." *Chambers,* 140 B.R. at 237 n. 5. Accordingly, they should be classified as core proceedings.

Furthermore, allowing the bankruptcy court to resolve the attorneys' fees issue makes common sense. It is the bankruptcy court who is most familiar with the case and the work of the attorneys involved. The bankruptcy court, therefore, has a better understanding as to whether the government's position was substantially justified and a better grasp of how much time and effort counsel has expended in defending a prevailing litigant's case. In short, allowing the bankruptcy court to award fees promotes "another congressionally-endorsed objective: the efficient and expeditious resolution of all matters connected to the bankruptcy estate." *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988) (discussing extent of court's jurisdiction over bankruptcy matters under 28 U.S.C. § 1334(b)).

For the foregoing reasons, we hold that the bankruptcy court may award attorneys' fees under 26 U.S.C. § 7430.

## III.

■ Although the district court erred in determining that the bankruptcy court lacked jurisdiction to award attorneys' fees, we can still affirm its holding denying the award of attorneys' fees. *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885 (9th Cir.1994) (holding that the appellate court can affirm a district court opinion, even if the district court reached its decision on erroneous grounds). We review a district court's award or denial of attorneys' fees for an abuse of discretion and "reverse only if we have a firm and definite conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *TKB International, Inc. v. United States,* 995 F.2d 1460, 1468 (9th Cir.1993); *Estate of Merchant v. CIR,* 947 F.2d 1390, 1392–93 (9th Cir.1991). Similarly, the district court reviews the bankruptcy court's decision to award attorneys' fees for an abuse of discretion. *See Cinematronics,* 916 F.2d at 1449. On appeal, we perform the same function as did the district court; we review the bankruptcy court's decision under the abuse of discretion standard.

■ For an award of litigation costs under section 7430, the prevailing party must have: (1) exhausted the administrative remedies; (2) established that the IRS' position in the proceeding was not substantially justified; (3) substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (4) not unreasonably protracted any portion of the proceeding. *Germaine,* 152 B.R. at 627, 26 U.S.C. § 7430(b) and (c).

■ The taxpayer bears the burden of establishing that the government's position was not substantially justified. 26 U.S.C. § 7430(c)(4)(A)(ii); *Huffman v. CIR,* 978 F.2d 1139, 1147 (9th Cir.1992). The government's position is substantially justified if "it has a reasonable basis in both the law and

fact." *Norgaard v. CIR*, 939 F.2d 874, 881 (9th Cir.1991). As the Supreme Court has observed, substantially justified means "more than merely undeserving of sanctions for frivolousness." *Pierce v. Underwood*, 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

The Yochums argue that because they prevailed in the matter, the government's position was not substantially justified. They repeatedly point out that the court found they were not required to pay income taxes for the years 1977–1985 and that they owed the IRS only $1,171 in unpaid Social Security tax. Winning, however, is not everything, particularly under this statutory framework.

The IRS instituted this action against the Yochums because they had failed to file income tax returns for eight years. When the IRS filed its initial proof of claim in 1987, its determination that the Yochums owed over $400,000 in back taxes and penalties was based on estimates of the Yochums' tax returns. When the Yochums did file their tax returns, it was only upon order of the court. Even then, many of their claims and deductions lacked documentation. Thus, for a period of several months, the IRS and the Yochums haggled over the Yochums' tax returns.

When the Yochums did substantiate their returns, the record reflects that the IRS was willing to drop its claims. For example, upon finding out that the "Liberty" was a for-profit enterprise, and not a hobby as the IRS initially concluded, the Service allowed the Yochums to take deductions for a loss.

Thus, at the outset of litigation, the parties had narrowed the claims to three issues: (1) the proper basis in the sale of Carson Iron Works and the equipment included therein; (2) the Yochums' tax treatment of labor costs incurred by their business; and (3) the Yochums' treatment of a 1979 sale of Napa Valley property as an installment sale.

The record demonstrates that these issues remained unresolved largely because the Yochums provided little, if any, evidence to back up their claims. For instance, to substantiate their legal theory of the correct basis in the Iron Works, the Yochums provid-ed the testimony of their accountant, who had no independent knowledge or access to records that would support the Yochums' tax treatment. The Yochums also offered Merritt's testimony, but this too was problematic because he had no documents or records to corroborate his theories and claims.

Not surprisingly, the bankruptcy court observed that the Yochums had "an evidentiary problem here, and it goes right to the heart of your basis, establishing your basis in the equipment and the building. And that's the big item here." The court was forced to continue the matter so that the Yochums could "produce the invoices or the ledger entries or expenditures," or some other documentation to back up their claims.

At the second hearing, the Yochums attempted to offer affidavits of individuals who could allegedly demonstrate the basis in the Iron Works property as sold in 1980. However, the government objected to these affidavits on hearsay grounds, an objection which the court sustained. Merritt Yochum then took the stand again and once again offered no documentation to support his claims.

Two additional hearings took place and at the beginning of the June 14, 1989 hearing, the government noted that it would accept the taxpayers' treatment of the Napa Valley property sale. The Service had previously conceded the labor costs claimed by the Yochums upon hearing testimony from the Yochums' accountant at the November 2, 1988 hearing.

Following the protracted series of hearings, the bankruptcy court found that the Yochums had a total net gain of $110,000 on the sale of the Iron Works, not a net loss as they reported on their tax returns.

On the whole, it would seem that the government's position was substantially justified, even though the Yochums ultimately paid no income tax for the years in question. The Yochums bore the burden of showing entitlement to a particular deduction, *Norgaard*, 939 F.2d at 877, and when they failed to do so, the IRS pursued this action against them. As the district court observed, the IRS was forced to operate in a "vacuum" because

"even after the returns were filed, there were many things that had to be sought out and determined and dug up and information to be obtained."

█ Furthermore, the bankruptcy court's contention that the IRS was not substantially justified because it failed to re-evaluate its position during litigation and did not attempt to negotiate with the Yochums is not supported by the record. As noted above, when it was able to obtain appropriate documentation from the Yochums, the IRS allowed them to take the various deductions which they had claimed. The IRS also attempted to negotiate with the Yochums prior to requesting a hearing; it filed a detailed audit of the Yochums' returns, listing several dozen issues in dispute and it also narrowed down those issues for trial.

We have a firm and definite conviction that the bankruptcy court committed a clear error of judgment in awarding attorneys' fees. *See TKB*; 995 F.2d at 1468. Given the paucity of documentation supporting the Yochums' tax returns, the IRS was substantially justified in bringing this claim against them. Accordingly, we affirm.

## IV.

█ The Yochums argue that they were denied procedural due process because the IRS failed to submit specific written objections to the bankruptcy court's findings of fact and conclusions of law. Bankruptcy Rule 9033(d) provides that in reviewing non-core proceedings, the district court reviews the record or "any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made" under a de novo standard. Because the IRS filed only generalized objections to the bankruptcy court's findings, the Yochums argue that their procedural due process rights were violated.

█ To satisfy procedural due process, a deprivation of life, liberty, or property must be "preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Here, the IRS submitted a written objection to the bankruptcy court's findings of fact which stated that the Service objected to an award of fees and costs for the period before and after the Yochums filed their tax returns. Although this may not have been particularly specific, the government's objections placed the Yochums on notice that it was contesting the bankruptcy court's order.

The Yochums also had an opportunity to be heard on the matter. On January 31, 1995, the district court held a hearing at which both sides strenuously argued their points. At that time, the Yochums did not object to the IRS' form of objections, nor did they claim their procedural due process rights were being violated by the proceedings. Moreover, given the lengthy and protracted litigation over the fees issue, it seems somewhat disingenuous for the Yochums to argue that they were not aware of what the government's arguments and objections were.

Because the Yochums were provided with notice and an opportunity to respond, we deny their claim.

## CONCLUSION

We **REVERSE** the district court opinion finding that the bankruptcy court lacks jurisdiction to award attorneys' fees, but **AFFIRM** the denial of attorneys' fees because the government's position was substantially justified.

Each party shall bear its own costs on appeal.