KLEINFELD, Circuit Judge,
concurring:
I concur in the result reached by Judge Beezer’s opinion. Vickie’s counterclaim against Pierce is not a core proceeding, so the Texas probate court judgment preceded the district court judgment and controls.
I have no quarrel with the majority opinion, and offer no argument against it. I write merely to offer additional grounds that compel the same result.
Several alternative and independent grounds compel reversal: (1) because Pierce Marshall sought no damages from the bankruptcy estate, just a judgment that his Texas defamation judgment would not be discharged by the California bankruptcy, his claim could not affect the size of the estate available to Vickie Marshall’s creditors; (2) Vickie’s counterclaim for money could not affect whether Pierce’s defamation claim was dischargeable; (3) Vickie’s counterclaim was not related to the bankruptcy, because she had already been discharged and her creditors would get none of the money she sought from Pierce in her counterclaim; (4) Pierce’s defamation claim in Texas was a common law claim for personal injury, which cannot be core. Vickie’s counterclaim (itself a non-core tort claim) amounted to evasion of Pierce’s constitutional right to jury trial in Texas. That evasion cannot stand shielded by bankruptcy court jurisdiction, especially when her bankruptcy was over and her debts discharged.
Pierce’s proof of claim is attached to this concurrence as an appendix. He made two substantive entries on the form. For the date the debt was incurred he said “see attached Ex. ‘A’. And he checked the box for “unsecured nonpriority claim,” and wrote “unliquidated” and “see attached Exhibit ‘A’ ” rather than stating an amount. To understand what claim he made, we must therefore look at his exhibit A, which is attached.
Pierce’s exhibit A is not a defamation claim for money. He had filed that in Texas years before, and was awaiting final judgment. Instead, exhibit A is entitled “complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6).” Pierce alleges that Vickie and her lawyers defamed him in the press, in order to humiliate him and to extort a settlement from him of the claims against his father’s estate. Their “willful and malicious acts,” he alleges, “resulted in injury to the Plaintiff and/or the Plaintiffs property.” But he does not seek money damages for this defamation. He was doing that in Texas. For his “cause of action” in bankruptcy court, Pierce pleads that “any discharge” Vickie may receive under bankruptcy law “will not discharge E. Pierce Marshall’s claims against the Defendant.” His prayer does not seek money damages, just a declaratory judgement “that the Plaintiffs claims against the defendant have not been discharged” and costs, attorneys fees, and such other relief as is just.
Vickie’s counterclaim cannot be core because Pierce carefully framed his complaint to seek only a declaratory judgment of nondischargeability, not a judgment that his defamation claim was meritorious and not a claim for money damages caused by the defamation. Bankruptcy court is the *1066 right place to litigate whether a debt was dischargeable. Pierce could not very well obtain judgment in a Texas trial court controlling dischargeability of a debt in a California bankruptcy. Bankruptcy court is the wrong place to litigate a common law claim for personal injury to final judgment, and Pierce did not seek to litigate his personal injury claim there.
The statute provides that “core” proceedings include “claims against the estate ... but not the liquidation or estimation of contingent or unliquidated personal injury tort ... claims against the estate for purposes of distribution in a case under chapter 11.” [1] Thus “claim” for purposes of determining “core” is a statutory term of art meaning something narrower than what the word ordinarily means. Pierce’s defamation claim would not be a “claim” under the statutory definition, because the statutory definition excludes unliquidated personal injury claims. Neither his defamation claim being litigated in Texas nor his nondischargeability claim filed in bankruptcy court would affect distribution of the estate. One might imagine, from the statutory language alone, that because Pierce’s claim for a declaratory judgment of nondischargeability is core, that any counterclaim would be core.[2] But the cases construing the statute establish that such an interpretation would be mistaken.[3] Compulsory claims, such as setoff, can be core, but not all counterclaims are core.[4] Vickie’s tort claim for interference with an expected gift, though a counterclaim to Pierce’s claim for a declaratory judgment of nondischargeability of his defamation claim, is not core.[5] Were core jurisdiction over counterclaims read more broadly, Marathon would loom as a constitutional barrier.[6] The bankruptcy court had jurisdiction to make a determination of whether Pierce’s claims against Vickie would survive bankruptcy because the question of *1067 whether a claim is dischargeable in bankruptcy involves “the restructuring of debt- or-creditor relations, which is at the core of the federal bankruptcy power.”[7] That determination, however, does not require adjudication of liability or damages on Pierce’s or Vickie’s tort claims, and that determination is all Pierce sought in bankruptcy court.[8]
We held, applying Marathon and the 1984 Act implementing Marathon, in Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)[9] that even though the debtor had filed a counterclaim to the creditors’s claim, the counterclaim did not fall within the Bankruptcy Court’s core jurisdiction. The creditor had not filed a claim for money in bankruptcy court, just for relief from the automatic stay, just as Pierce did not file a claim for money, merely for a nondischargeability determination. “In reaching this conclusion, we emphasized that courts ‘should avoid characterizing a proceeding as ‘core’ if to do so would raise constitutional problems.’ ”[10] That, on its face, Vickie’s counterclaim appears to fall within the words of § 157(b)(2)(C), does not, under Castlerock and Marathon, end the matter. The Supreme Court, in Marathon, held that “Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law.”[11] The same reasoning applies to Pierce’s tort claim arising under state law, and Congress expressly preserved state law tort claims outside the jurisdiction of bankruptcy courts.[12]
Vickie’s counterclaim is not related to the question of whether Pierce’s defamation claim is dischargeable. Her tortious interference with a gift claim, if there is such a cause of action and she can prove its elements, could stand or fall regardless of whether his defamation claim was dis-chargeable or not. We need not reach the question whether, had Pierce sought damages for defamation as a creditor in bankruptcy, her counterclaim would be core, because he carefully avoided doing that. All that was required of the bankruptcy court in this case was to determine whether, if Pierce successfully proved in Texas what he pleaded in Texas, “willful and malicious injury” would preserve his judgment from discharge in Vickie’s bankruptcy.[13] Whether a claim is dischargeable is a separate question from whether the claimant will prevail on the merits of that claim.[14] Because Pierce did not seek money from the bankruptcy estate for Vickie’s defamation, or even estimation of the value *1068 of his claim,[15] Vickie’s counterclaim could not affect money distributable to her creditors and should not be deemed “core.”[16]
Even if all the above analysis is mistaken, Vickie’s counterclaim was not “core” for another independent reason. She had already obtained her discharge in bankruptcy. Her counterclaim could not enlarge the amount of money distributable to her creditors, because of the discharge. She sought money for herself only, not a nickel of which would be shared among her creditors. Her claim was only nominally “by her bankruptcy estate,” and was in substance her personal claim for a judgment of hundreds of millions of dollars of which she would get every penny. Her claim should therefore be deemed not “related to” her bankruptcy case. My reasoning follows our holding in In re Fietz[17] that once a chapter 13 plan was confirmed, so that creditors could assert no interest in a subsequent recovery on a cross claim, the bankruptcy court lacked jurisdiction because the claim was not “related to” the bankruptcy case. Because the claim “could not have had any conceivable effect on administration of the bankruptcy estate” and would have been “beyond the reach” of the creditors, jurisdiction was absent.[18]
There is yet another independent reason, elementary and compelling even without the others, that the bankruptcy court was without jurisdiction over Vickie’s counterclaim. Pursuant to the Bankruptcy Code, the bankruptcy court would not have had jurisdiction over Pierce’s defamation claim even had he asserted it there, which he did not. 28 U.S.C. § 157(b)(5) requires that “the district court shall order that personal injury tort and wrongful death claims shall be tried in the district court.” This statutory provision implements the holding in Marathon that Article III precludes bankruptcy courts from entering *1069 final judgments on tort claims founded on state law. Because bankruptcy judges cannot enter final judgment in such cases, they also “cannot try selected defenses in these tort cases.... The whole case, including defenses of all kinds, goes off to the district judge or the state court.”[19] Pierce’s defamation claim pending in Texas was for personal injury.[20] Vickie’s claim, damages for tortious interference with a gift, was also a personal injury claim if it is a recognized tort.[21] Thus her claim is also outside the jurisdiction of the bankruptcy court. Accordingly, had Pierce filed a proof of claim for damages for defamation, the bankruptcy court would have lacked jurisdiction to enter final judgment on that claim. Because Vickie’s counterclaim was a personal injury claim, be it in defense of Pierce’s defamation claim or an independent cause of action, the bankruptcy court would have lacked jurisdiction to enter final judgment on it.[22] Under Marathon and the statute, she could not evade Pierce’s right to jury trial and an Article III court by shoehorning it into a bankruptcy filing, even had the discharge in bankruptcy not already rendered it not “related.”
Pierce asserted a personal injury claim, defamation, in Texas, and prevailed in a five month jury trial in Texas. All he filed in Vickie’s bankruptcy case was a claim for a declaratory judgment that whatever judgment he obtained in Texas would stand undischarged by Vickie’s bankruptcy. Vickie used the vehicle of her bankruptcy case, even though it was effectively over, to file a personal injury claim against Pierce for interfering with a putative gift to her from his father. The bankruptcy court could not grant final judgment because her claim was for personal injury, was not related to the bankruptcy estate because she had obtained her discharge, and it was not “core.” Pierce’s constitutional rights to an Article III court and to jury trial as well as his statutory rights prevented jurisdiction in the bankruptcy court over Vickie’s claim against him. When the bankruptcy court decided otherwise, it was without jurisdiction to do so.
*1070 APPENDIX
[[Image here]]
*1071 EXHIBIT A
[[Image here]]
*1072 [[Image here]]
*1073 [[Image here]]
*1074 [[Image here]]
*1075 [[Image here]]
*1076 [[Image here]]

. k 28 U.S.C. § 157(b)(2)(B); see also id. § 157(b)(2)(0).

. See id. § 157(b)(2)(C) ("Core proceedings include, but are not limited to ... counterclaims by the estate against persons filing claims against the estate").

. See, e.g., Piombo Corp. v. Castlerock Properties (In re Castlerock Properties), 781 F.2d 159, 162 (9th Cir.1986) ("The apparent broad reading that can be given to § 157(b)(2) should be tempered by the Marathon decision.”).

. See, e.g., Dunmore v. United States, 358 F.3d 1107, 1114 (9th Cir.2004) (holding that non-core matters are those that “do not depend on the Bankruptcy Code for their existence and ... could proceed in another forum”); Sec. Farms v. Int’l Bhd. of Teamsters, 124 F.3d 999, 1008 (9th Cir.1997) ("Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered ‘noncore.’ ”); United States v. Yochum (In re Yochum), 89 F.3d 661, 670 (9th Cir.1996) ("In determining whether a matter is a non-core proceeding, we look to a variety of factors 'such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case.' ”) (citation omitted).

. See Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir.1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but ... it is an 'otherwise related’ or non-core proceeding.”) (cited with approval by Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.), 935 F.2d 1071, 1077 (9th Cir.1991)).

. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 76, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion) ("Art. Ill bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws. The establishment of such courts does not fall within any of the historically recognized situations in which the general princi *1067 pie of independent adjudication commanded by Art. Ill does not apply.”).

. Id. at 72, 102 S.Ct. 2858.

. See Eastport Assocs., 935 F.2d at 1077 (“While the district courts have jurisdiction under 28 U.S.C. § 1334 to decide state claims if they are related to a bankruptcy case, the bankruptcy courts may only decide claims if they are part of core proceedings. In non-core proceedings, the bankruptcy courts may only make recommendations to the district courts. 28 U.S.C. § 157(c)(1).”).

. 781 F.2d 159, 161 (9th Cir.1986).

. Taxel v. Elec. Sports Research (In re Cinematronics, Inc.), 916 F.2d 1444, 1450 (9th Cir.1990) (quoting Castlerock, 781 F.2d at 160).

. Accord Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (explaining the holding of Marathon).

. 28 U.S.C. § 157(b)(2)(B); see also id. § 157(b)(2)(0).

. 11 U.S.C. § 523(a)(6).

. Grogan v. Garner, 498 U.S. 279, 290, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[N]ondischargeability [is] a question of federal law independent of the issue of the validity of the underlying claim.”).

. 28U.S.C. § 157(b)(2)(B).

. This is consistent with the Supreme Court’s teachings in Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), and Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In those cases, the outcome depended on whether the party claiming a jury trial had invoked the claims allowance process of the bankruptcy court by filing a claim against the estate. In Granfinanciera, the Court explained that because the petitioner had "not filed claims against the estate, [the trustee’s] fraudulent conveyance action [did] not arise 'as part of the process of allowance and disallowance of claims.’ Nor [was] that action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury.” 492 U.S. at 58-59, 109 S.Ct. 2782. In Langenkamp the parties claiming a right to jury trial had filed a claim against the estate, "thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court,” and thus were not entitled to a jury trial. 498 U.S. at 45, 111 S.Ct. 330. Here, Pierce did not file a proof of claim seeking anything from the bankruptcy estate.

. Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir.1988) (holding that the standard for the bankruptcy court to exercise “related to” jurisdiction in an adversary proceeding is whether "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.”); Menk v. LaPaglia (In re Menk), 241 B.R. 896, 907 (B.A.P. 9th Cir.1999) ("Once the administration of the bankruptcy case has ended, the relation to the case becomes so attenuated that § 1334(b) 'related to’ jurisdiction presumptively expires unless the court specifically retains jurisdiction.”).

. Fietz, 852 F.2d at 459. See also the discussion of Langenkamp and Granfinanciera in footnote 16. Because Vickie’s bankruptcy was discharged, Pierce's claim and Vickie’s counterclaim no longer related to "the process of allowance and disallowance of claims” or were they "integral to the restructuring of debtor-creditor relations.” Granfinanciera, 492 U.S. at 58-59, 109 S.Ct. 2782.

. Pettibone Corp. v. Easley, 935 F.2d 120, 123 (7th. Cir.1991).

. See In re Dillard Dept. Stores, Inc., 186 S.W.3d 514, 516 (Tex.2006) (holding an employee's defamation claim fell within scope of an agreement requiring arbitration of claims for personal injuries); see also Rizzo v. Passialis (In re Passialis), 292 B.R. 346, 348 (Bankr.N.D.Ill.2003) (applying Texas law).

. See Marshall v. Marshall, 547 U.S. 293, 313, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006) ("Texas courts have recognized a state-law tort action for interference with an expected inheritance or gift, modeled on the Restatement formulation.”); King v. Acker, 725 S.W.2d 750, 754 (Tex.App.1987) (discussing the availability of emotional distress damages under the Restatement (Second) of Torts § 774A (1977)).

.28 U.S.C. § 157(b)(5).